Afiyfa H. Ellington, Esq. / PA ID #331322
Joshua Cohen, Esq./PA ID #330855
**Abira Medical Laboratories, LLC d/b/a**
**Genesis Diagnostics**
957 Route 33 **|** Suite 12 **|** #322
Hamilton Square **|** New Jersey **|** 08690
Tel: (212)220-1616 **|** Fax: (609)798-0327
aellington@genesisdx.com
*Counsel for Abira Medical Laboratories, LLC d/b/a Genesis*
*Diagnostics*

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS, | CASE NO. |
| Plaintiff | **VERIFIED COMPLAINT** |
| vs. | |
| BLUE CROSS BLUE SHIELD Of ARIZONA, INC., ABC COMPANIES 1-100, AND JOHN DOES 1-100 | |
| Defendants | |

## I. INTRODUCTION

1.   This is an action seeking to collect, *inter alia*, for medical laboratory services rendered in the amount of, or in excess of $1,542,028.00, exclusive of interest and costs. The Plaintiff, Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics (hereafter, "GENESIS" or "Plaintiff"), performed laboratory test services, including but not limited to COVID-19 tests, for the Defendants, their agents, servants, employees, insureds, or others

through whom they acted, or others on whose behalf they acted. GENESIS performed medical laboratory testing for tests ordered by physician members of insurance companies, ordered by a non-member physician, or an insured/patient member of an insurance company.

2.   The Defendant, Blue Cross Blue Shield of Arizona, Inc. (hereafter, "BCBS"), their agents, servants, employees, insureds, or others with or through whom they acted, or others on whose behalf they acted, including but not limited to their affiliates, the ABC companies 1-100, and John Does 1-100 (collectively with BCBS referred to as "Defendants"), ordered and/or authorized laboratory services including but not limited to COVID-19 tests to be performed by GENESIS.

3.   Plaintiff, an authorized representative of the insured/claimants pursuant to 29 C.F.R. § 2650.503-1(b)(4), has the right to file appeals and take any necessary legal action to secure for the claimants the benefits already paid for under their insurance contract.

4.   There is little dispute that services were rendered. There is a dispute by Defendants as to whether a few of the tests were already paid for, and the amount of the remaining balance. There is a dispute wherein Defendants sought additional records, which were supplied, but which did not result in payment. Effectively, this was an appeal process culminating in the improper

denial of payment for laboratory services rendered, and exhausting the available administrative remedy.

5.    An October 10, 2021 demand letter to BCBS from attorney David Ghisalbert, Esq, (see copy attached hereto as "***EXHIBIT A***") clearly made demand for all unpaid claims. BCBS has refused to make payment for services rendered.

## II.  <u>PARTIES</u>

6.    Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics is a domestic limited liability company organized under the laws of the State of New Jersey. Several of GENESIS' administrators and decision-makers live in New Jersey, work in New Jersey, and run GENESIS' affairs from New Jersey.

7.    At all times relevant hereto, the principal medical testing laboratory was located at 900 Town Center Drive, Suite H50, Langhorne, Pennsylvania 19047.

8.    Defendant, Blue Cross Blue Shield of Arizona, Inc., incorporated in the State of Arizona and an independent licensee of Blue Cross Blue Shield, provides health insurance services throughout the State of Arizona and the United States, and has its principal place of business located at 2444 W. Las Palmaritas Drive, Phoenix, AZ 85021.

9.    GENESIS is unaware of the true names and capacities of Defendants named herein as ABC Companies 1 through 100

and JOHN DOES 1 through 100, inclusive, and therefore asserts claims against these Defendants by such fictitious names.

10.   GENESIS will amend this Complaint to show the true names and capacities of such ABC Companies and JOHN DOES when the same have been ascertained.

11.   GENESIS, on information and belief, alleges that each of the fictitious named Defendants, jointly and severally, are responsible in some manner for the actions and occurrences herein alleged, and that GENESIS' damages were approximately caused by their acts.

12.   On further information and belief, GENESIS alleges that at all times herein mentioned, the ABC Companies and JOHN DOE Defendants acted in concert with, through, and were/was the agent, employee, contractor, partner, servant, employee and/or representative, with the permission and consent of the other Defendants.

## III. JURISDICTION AND VENUE

13.   Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, due to the complete diversity of the parties, the existence of a justiciable dispute between the parties, the issue(s) involving federal statutes, a dollar amount in excess of that required for federal jurisdiction, and the fact that the services at issue were rendered within the Commonwealth of Pennsylvania.

14.  There were continuing and substantial contacts with the medical laboratory testing operations in Pennsylvania, between GENESIS and Defendants.

15.  Defendants processed and paid several claims that were submitted by GENESIS, which taken with the other factors is sufficient to establish sufficient continuing and minimum contacts in Pennsylvania, for jurisdictional purposes.

16.  Moreover, the Employee Retirement Income Security Act of 1974 ("ERISA") is unique in having relaxed jurisdictional requirements, as it was designed to remove jurisdictional and procedural obstacles that would hinder effective enforcement [1]; this is reflected directly in the code:

> i. 29 U.S.C. § 1132(e)(2) – "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, **where the breach took place**…",
>
> and
>
> ii. 29 U.S.C. § 1132(f) "the district courts of the United States shall have jurisdiction, **without respect to the amount in controversy or the citizenship of the parties**, to grant the relief provided for in subsection (a) of this section in any action."
>
> [emphasis supplied]

---

[1] Senate Report No. 127, 93rd Congress, 1st Session (1973), in 1974 U.S. Code Cong. & Ad. News 4871.

17.   Pursuant to 29 U.S.C. § 1132(e), State courts have concurrent jurisdiction over this action.

## IV.   FACTS

**[A]   GENESIS Operated A Medical Testing Laboratory And Rendered Services to the Defendants' Insurance Companies' Insureds/Claimants**

18.   GENESIS operated a licensed medical testing laboratory business, which provided services nationwide, with approximately 150 employees, including but not necessarily limited to physicians, scientists, technicians, administrative personnel, and sales representatives.

19.   As part of its business model, GENESIS performed clinical laboratory, toxicology, pharmacy, genetics, and addiction rehabilitation testing services on specimens submitted for numerous insureds/claimants located throughout the United States (the "Laboratory Testing Services").

20.   At the advent of the COVID-19 pandemic, in addition to its pre-existing schedule of specimen tests, GENESIS offered COVID-19 testing, as part of its contribution to combatting the COVID-19 pandemic.

21.   GENESIS obtained regulatory approvals and emergency use authorizations from numerous states to provide COVID testing and reporting on a timely basis, with monthly reauthorizations and renewals, which required test results to be reported within specified time constraints, in order to grant reauthorization.

22.  Additionally, GENESIS held a regional designation to perform first responder testing for police, firefighters, and healthcare workers, and provided testing for prison systems in multiple counties, including in Pennsylvania.

23.  Physicians and patients relied upon GENESIS to rapidly provide the results from Laboratory Testing Services in order to inform medical decisions on patient care and public safety.

24.  Additionally, various businesses, such as nursing homes, sent tens of thousands of daily specimens to GENESIS, for timely results that informed whether to isolate or hospitalize insureds/claimants, to limit infection, avoid the spread of the COVID-19 virus, and death.

25.  The insurance contracts between the insurance companies and the insureds/claimants include Benefits clauses or provisions, which require the Defendants to pay for laboratory testing of the insureds'/claimants' specimen.

26.  As the Defendants are required under the Benefits clauses in the insurance contracts to pay for the laboratory testing of the insureds'/claimants' specimen, the insureds/claimants designated GENESIS as an assignee of the insurance contracts, as evidenced by providing their authorization and/or insurance information to GENESIS, specifically for GENESIS to claim payments from the Defendants for the lab tests.

27.   In addition to being an authorized representative of the claimants pursuant to 29 C.F.R. § 2560.503-1(b)(4), when the insureds/claimants designated GENESIS as an assignee of the insurance contracts, this did in fact put GENESIS in privity of contract with the Defendants to be paid for the lab tests.

28.   BCBS regularly refused to pay and/or underpaid claims properly submitted by GENESIS – including without limitation, claims for COVID-19 testing GENESIS performed for BCBS of enrollees during the pandemic – or simply failed to respond in any way to claims properly submitted by GENESIS, all in violation of applicable state and federal law.

29.   The Defendants were supposed to pay the claims, pursuant to the GENESIS fee schedule or the insurer's fee schedule, or typically, negotiate a reasonable fee.

30.   The dates of service for the claims underlying this action are from 2016 through 2021.

31.   Defendants, however, processed and actually sprinkled payments of claims paid GENESIS for some claims that occurred in 2018 through 2021 so that:

> i. by processing/payment and the communication involved with GENESIS' claim submission, plus Defendants' advising from time-to-time that claims submitted were "processed and paid," Defendants impressed upon GENESIS that they would continue to honor the claims;

ii. whereas Defendants representatives knew that they merely induced GENESIS to continue to provide specimen testing to their insureds/claimants, from whom they collected premium payments for the insurance contracts, but Defendants intended to watch GENESIS' claims increase, knowing that they would later refuse to pay GENESIS for a substantial amount of outstanding claims;

iii. the Defendants engaged in the processing/payment of GENESIS' claim and the intermittent communication representing to GENESIS that they would continue to pay subsequent claims, with the intention that GENESIS would rely on such, to continue providing testing services to Defendants' insureds/claimants,

iv. Even as the claims grew, due to prior processing/payment, and communication from Defendants' representatives, GENESIS reasonably relied on the Defendants to pay subsequent claims;

v. Defendants then allowed GENESIS' claims to grow substantially and caused financial damage to GENESIS, by refusing to pay GENESIS for the substantial outstanding claims.

**[B]  GENESIS Is An Authorized Representative of the Insureds/Claimants**

32. Defendants, being health insurance companies, third-party administrators, health and welfare funds, or even self-

insured employers, providing health insurance services to their members, intentionally and unlawfully denied benefits to their insureds/claimants (and their assignees), by failing to pay GENESIS, for laboratory testing of specimen, including but not limited to COVID-19 tests, which GENESIS performed for the insureds/claimants.

33. Defendants have contractual obligations to the natural person insureds/claimants.

34. To the extent that the contracts relevant to the underlying claims are governed by ERISA, this action is brought to: (1) recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and (2) for equitable relief, pursuant to 29 U.S.C. § 1132(a)(3).

35. Pursuant to 29 C.F.R. § 2560.503-1(b)(4), GENESIS is an "authorized representative" acting on behalf of the insureds/claimants for any necessary legal action, to secure for the insureds/claimants, the benefits that they already paid for under the contracts with the Defendants.

36. For the purpose of their claims, the insureds/claimants designated GENESIS as their assignee, as evidenced by the insureds/claimants providing their insurance information to GENESIS, for the purpose of GENESIS filing claims with the Defendants for payment of lab tests, which the insurance contracts require Defendants to cover.

37.   As anyone who has had a medical laboratory test performed knows, or should know, it is the usual and customary business practice of medical testing laboratories to obtain an insured's signature (a) to authorize the laboratory test to be performed (i.e. blood draw, etc.), and (b) to authorize the medical testing laboratory to charge the insured's insurance company and collect from the insured's insurance company for the laboratory test (or other service) performed; assigning the right of collection to the laboratory. This was the usual business practice of GENESIS.

38.   GENESIS exhausted the administrative remedies over nonpayment of these claims, by filing appeals when the claims were denied, thus preserving this action with regard to over one thousand and one hundred (1,100) claims underlying this action, and any applicable statute of limitations.

39.   GENESIS seeks benefits under 29 U.S.C. § 1132(a)(1)(B), and equitable relief 29 U.S.C. § 1132(a)(3), in the amount of $1,542,028.00, exclusive of costs and interest.

40.   GENESIS is also entitled to attorney fees and costs of suit pursuant to 29 U.S.C. § 1132(g)(1), and other legal or equitable relief as this court deems appropriate, pursuant to 29 U.S.C. § 1132(g)(2)(E).

41.   Where Defendants are an insurer, it failed to pay GENESIS directly for claims GENESIS submitted for its services rendered by laboratory testing of the insureds'/claimants' specimens.

42.   Where Defendants are a third-party administrator, it acted as an agent of the insurer, furnished by the insurer with the necessary funds to perform the administrative service of processing and paying claims on the insurer's behalf, but for avarice, the third-party administrator failed to process and pay said claims.

43.   Defendants were supposed to verify and honor the claims submitted by the laboratory, but instead, they:

      i.   entered into insurance contracts with the insureds/claimants, by which they communicated to the insureds/claimants, that pursuant to Benefits clauses or provisions of contract, if the insureds/claimants got tested and gave the lab their insurance information, the insurer would pay the lab when it submits its claims to the insurer for laboratory testing it performed;

      ii.   Defendants knew that the representations and promises made to the insureds/claimants via the insurance contracts were misrepresentations and false promises, with regard to paying for their laboratory testing, and knew that such would not be honored;

     iii.   Defendants intended for the insureds/claimants to rely on the promises and representations

communicated to the insureds/claimants via the insurance contracts, that the insurer would pay the lab when it submits its invoice or claims to the insurer for laboratory testing it performed;

iv.   The insureds'/claimants' reliance on the Defendants' promises were reasonable, because they made the premium payments to the Defendants, submitted their specimen to GENESIS for testing, and designated GENESIS as an assignee/authorized representative of the insurance contracts pursuant to 29 C.F.R. § 2560.503-1(b)(4), to process payment for the lab testing, as evidenced by providing their insurance information to GENESIS;

v.   Ultimately, the Defendants damaged the insureds/claimants by refusing to pay GENESIS, for the laboratory testing performed for the insureds/claimants, and also damaged GENESIS, who came into privity of contract with the Defendants as an assignee of the insured.

**[C]   Claims Arising From COVID-19**

44.   With regard to those claims arising from the COVID-19 pandemic, Congress took extraordinary steps to require health

plans and health insurance issuers like Defendants to cover and pay for coronavirus testing.

45.  Congress prohibited health plans and health insurance issuers from imposing any prior authorization or other medical management requirements on testing for the diagnosis of COVID-19. [See Families First Coronavirus Response Act ("FFCRA") § 6001(a)].

46.  Congress required that group health plans and health insurance issuers like Defendants must cover and reimburse COVID-19 testing and related services, which were laid out not just in the text of the FFCRA and Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), but also in a series of "Frequently Asked Questions" ("FAQs") documents issued and publicly posted by the U.S. Department of Health and Human Services ("HHS").

47.  Pursuant to Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, Defendants must provide benefits for certain COVID-19-related items and services, including COVID-19 testing, furnished starting from March 18, 2020.

48.  Specifically, Defendants "must provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization, or other medical management requirements." See FFCRA, § 6001(a); FAQs About FFCRA, Part 44, pg. 1-2, February 26, 2021.

49.  Moreover, the FAQs clarify that plans and issuers are prohibited from imposing specific screening criteria on coverage

of COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19. *Id.* at pg. 2, Q1.

50.   Thus, "[w]hen an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an 'individualized clinical assessment' and the test should be covered without cost sharing, prior authorization, other medical management requirements." *Id.* at pg. 2-3.

51.   Federal guidance under the FFCRA and CARES Act makes it clear that Defendants' obligation extends to a wide array of coverage and testing types; the FFCRA/CARES Act payment rules apply to "group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans)," which specifically includes "both insured and self-insured group health plans," including "private employment-based group health plans (ERISA plans), non-federal governmental plans...and church plans." See FAQs, Part 42, Q1, pg. 2-3, April 11, 2020.

52.   Defendants' reimbursement obligations also apply to all manner of COVID-19 diagnostic testing, including serological (otherwise known as "antibody") testing, and tests administered at

home through self-collection. See FAQs, Part 42, Q1, pg. 2-3, April 11, 2020; FAQs, Part 43, Q4, pg. 6, June 23, 2020.

53.   Regulators have even warned that plans and issuers shall not attempt to "limit or eliminate other benefits . . . to offset the costs of increasing the generosity of benefits related to the diagnosis and/or treatment of COVID-19." See FAQs, Part 42, Q9, pg. 7-9, April 11, 2020.

54.   There can be no debate that FFCRA and CARES Act require Defendants to pay for the COVID-19 testing services which GENESIS provided.

55.   GENESIS had every reasonable expectation that Defendants would honor their obligations and properly reimburse GENESIS for the COVID-19 testing services it provided to Defendants' insureds/claimants.

56.   Defendants, however, failed to pay GENESIS for its services, including but not limited to COVID-19 diagnostic testing that GENESIS provided to Defendants' insureds/claimants, to the detriment of GENESIS.

### v.   LEGAL CLAIMS

### COUNT ONE
### BREACH OF CONTRACT

57.   GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 56, as if expressly rewritten herein.

58. The Benefits clause in the valid and binding insurance contracts and insurance plans which the insureds/claimants paid for, require the Defendants to pay for the laboratory testing of the insureds'/claimants' specimen.

59. The insureds/claimants assigned to GENESIS, the right to collect from the insurance company, file insurance claims for the lab testing, as evidenced by insureds/claimants providing GENESIS the necessary insurance information for GENESIS to file the claims and collect the payments on behalf of the insureds.

60. GENESIS is in privity with Defendants, so that GENESIS is entitled to prompt processing and payment of the claims for lab testing services rendered to Defendants' insureds/claimants.

61. Defendants, however, repeatedly breached the insurance contracts by either failing to respond at all to properly submitted claims or, for those claims in which Defendants did choose to respond, regularly refusing to pay claims submitted by GENESIS, for intentional dilatory reasons that were (and remain) entirely groundless.

62. Due to Defendants' acts and/or omissions, including their multiple breaches of the insurance contracts and/or statutory requirements, the insureds/claimants have been deprived of payments for lab testing GENESIS provided to the insureds/claimants.

63. Due to Defendants' multiple breaches of the insurance contracts, GENESIS has been deprived of payment for the insurance claims, which the insureds/claimants assigned GENESIS to collect on their behalf.

64. Defendants made no payments on the balance due and owing, which totals $1,542,028.00, for services rendered by GENESIS to Defendants' insureds/claimants, exclusive of interest and costs.

65. Defendants' failure to pay GENESIS as required under the insurance contracts (and applicable law) caused the insured/claimants and GENESIS to suffer damages, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

## COUNT TWO
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

66. GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 65, as if expressly rewritten herein.

67. Implied in all contracts is the covenant of good faith and fair dealing.

68. Defendants' acts and/or omissions, including but not limited to, failure and/or refusal to respond at all to properly submitted claims, or for those claims in which Defendants did choose to respond, regularly refusing to pay claims submitted by GENESIS for intentional dilatory reasons that were (and remain) entirely groundless, breached the implied covenants.

69.   Consequently, Defendants caused the insured/claimants and GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

**COUNT THREE**
**FRAUDULENT MISREPRESENTATION**

70.   GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 69, as if expressly rewritten herein.

71.   Defendants promised the insureds/claimants in the Benefits clause of the insurance contracts, that they would cover for the insureds/claimants, the cost of lab tests for specimen.

72.   Defendants knew, by their acts and/or omissions, that they merely intended for the insureds/claimants to rely on their representations in the insurance contracts, and subsequently for GENESIS, to rely on their representations, knowing that Defendants would later refuse to pay a substantial amount of claims that would grow over time.

73.   The insureds/claimants, and subsequently GENESIS, relied on Defendants' representations, in good faith, and such reliance was reasonable and justified.

74.   Defendants have therefore fraudulently induced the insureds/claimants to pay insurance premiums, and induced GENESIS to continue to perform laboratory testing services for Defendants'

insureds/claimants, for which Defendants had no intention to pay, and for which Defendants, in fact, did not pay GENESIS.

75. Consequently, Defendants caused the insured/claimants and GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

**COUNT FOUR**
**<u>NEGLIGENT MISREPRESENTATION</u>**

76. GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 75, as if expressly rewritten herein.

77. Defendants promised the insureds/claimants in the Benefits clause of the insurance contracts, that they would cover for the insureds/claimants, the cost of lab tests for specimen.

78. Defendants knew that they merely intended for the insureds/claimants to rely on their representations in the insurance contracts, and subsequently for GENESIS, to rely on their representations, knowing that Defendants would later refuse to pay a substantial amount of claims that would grow over time.

79. The insureds/claimants, and subsequently GENESIS, relied on Defendants' representations and/or promises, in good faith, and such reliance was reasonable and justified.

80. Defendant's negligent misrepresentations fraudulently induced the insureds/claimants to pay insurance premiums, and Defendants' induced GENESIS to continue to perform

laboratory testing services for Defendants' insureds/claimants, for which Defendants had no intention to pay, and for which Defendants, in fact, did not pay GENESIS.

81. Consequently, Defendants caused the insured/claimants and GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

## COUNT FIVE
## PROMISSORY ESTOPPEL

82. GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 81, as if expressly rewritten herein.

83. Defendants promised the insureds/claimants in the Benefits clause of the insurance contracts, that they would cover for the insureds/claimants, the cost of lab tests for specimen.

84. Defendants knew that by their acts and/or omissions, their payments and communication, they merely intended for the insureds/claimants, and for GENESIS to rely on their promises, knowing that they would later refuse to pay a substantial amount of claims that would grow over time.

85. The insureds/claimants and GENESIS relied on Defendants, especially because Defendants actually sprinkled payments to GENESIS, and Defendants' representatives communicated with GENESIS in good faith, and such reliance was reasonable and justified, with regard to ongoing and outstanding claims.

86. Defendants, in fact, did not pay GENESIS for the continued testing, and the substantial amount of claims GENESIS later submitted to them.

87. Defendants are or should be estopped from acting contrary to their representations and statutory obligations.

88. Consequently, Defendants caused the insured/claimants and GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

**COUNT SIX**
**EQUITABLE ESTOPPEL**

89. GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 88, as if expressly rewritten herein.

90. Defendants promised the insureds/claimants in the Benefits clause of the insurance contracts, that they would cover for the insureds/claimants, the cost of lab tests for specimen.

91. Defendants knew, by their acts and/or omissions, by their payments and communication, they merely intended for the insureds/claimants, and for GENESIS to rely on their promises, knowing that they would later refuse to pay a substantial amount of claims that would grow over time.

92. The insureds/claimants did not know that Defendants intended only for them to believe Defendants would pay for the

laboratory testing, without actually intending to pay for the lab tests.

93.   GENESIS did not know that Defendants intended only for it to believe they would pay for the laboratory testing, without actually intending to pay GENESIS for subsequent lab tests, especially because Defendants paid GENESIS at one point.

94.   The insureds/claimants and GENESIS relied on Defendants, especially because Defendants actually sprinkled payments to GENESIS, and Defendants' representatives communicated with GENESIS in good faith, and such reliance was reasonable and justified, with regard to ongoing and outstanding claims.

95.   Defendants are or should be equitably estopped from acting contrary to their representations and statutory obligations.

96.   Defendants did not pay for the continued testing, and the substantial amount of claims GENESIS later submitted to them.

97.   Consequently, Defendants caused the insureds/claimants and GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

### COUNT SEVEN
### QUANTUM MERUIT / UNJUST ENRICHMENT

98.   GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 97, as if expressly rewritten herein.

99.  In accordance with the insurance contracts between the Defendants and the insureds/claimants, Defendants collected insurance premium payments, in exchange for which they were supposed to use a portion of the premium payments they pooled to pay for the laboratory testing services promised under the contracts.

100. It is against equity and good conscience to permit Defendants to retain the money it intentionally and wrongfully failed to pay for lab tests, on behalf of the insureds/claimants.

101. Defendants have been unjustly enriched in the amount of not less than $1,542,028.00, plus interest, which pursuant to which pursuant to 29 C.F.R. § 2560.503-1(b)(4), the insureds/claimants authorized GENESIS to collect on their behalf.

**COUNT EIGHT**
**VIOLATION OF THE FFCRA AND CARES ACT**

102. GENESIS realleges and incorporates herein by reference, each of the foregoing allegations, paragraphs 1 through 101, as if expressly rewritten herein.

103. Defendant's offer group health plans and constitute a health insurance issuer offering group or individual health insurance coverage, as those terms are defined under Section 6001 of the FFCRA.

104. The COVID-19 testing services that GENESIS provided to Defendants' insureds/claimants constitute in vitro diagnostic products for the detection of COVID-19 or the diagnosis of the

virus that causes COVID-19, as provided by Section 6001 of the FFCRA.

105. Despite numerous and persistent demands and requests, Defendants have improperly and unlawfully failed and refused to pay, and/or have underpaid, GENESIS for providing COVID-19 testing services.

106. By failing and refusing its payment obligations under the FFCRA and CARES Act, Defendants deprived GENESIS of compensation, and caused GENESIS to suffer damages, for which Defendants are liable, in the amount in excess of $1,542,028.00, exclusive of costs and interest.

## VI. RELIEF SOUGHT

**WHEREFORE**, Plaintiff, Abira Laboratories, LLC d/b/a Genesis Diagnostics prays for judgment against Defendant, Blue Cross Blue Shield of Arizona, the ABC companies 1-100, and John Does 1-100, jointly and/or severally, as follows:

    i. Damages in the amount in excess of $1,542,028.00 for (a) benefits due to the insureds/claimants, cumulatively, pursuant to 29 U.S.C. § 1132(a)(1)(B) and/or (b) equitable relief due to the insureds/claimants, cumulatively, pursuant to 29 U.S.C. § 1132(a)(3);

    ii. Compensatory damages, contractual damages, consequential damages and punitive damages;

    iii. Award of prejudgment and post-judgment interest;

iv. Attorney's fees and costs of suit; and

 v. For such other relief deemed just and equitable.


**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands trial by jury of all applicable issues in this action.

                              Respectfully submitted,


Dated: January 12, 2024        s/    Afiyfa H. Ellington, Esq.
                              Afiyfa H. Ellington, Esq.

                              **Abira Medical Laboratories, LLC d/b/a**
                              **Genesis Diagnostics**
                              957 Route 33 **|** Suite 12 **|** #322
                              Hamilton Square **|** New Jersey **|** 08690
                              Tel:(212)220-1616 **|**Fax: (609)798-0327
                              aellington@genesisdx.com

## <u>VERIFICATION</u>

I, Alan Miller, being of full age and duly sworn according to law upon my oath, depose and say:

    1.   I am the Chairman of the Board of Directors of Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, a limited liability company of the State of New Jersey.

    2.   I have read the foregoing Verified Complaint, and the information contained therein is true and accurate based upon my personal knowledge and information.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**ABRIA MEDICAL LABORATORIES, LLC**
**D/B/A GENESIS DIAGNOSTICS**

Dated: January __12__ , 2024      _____

                              Alan Miller
                              Chairman of the Board of
                              Directors